**Maria GOMEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–352–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 30, 1982.

Rehearing Denied Sept. 9, 1982.

Discretionary Review Refused
Nov. 24, 1982.

---

1. Tex.Penal Code Ann. § 12.42 (Vernon's 1974)

Douglas Tinker, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a conviction for murder. The jury found appellant guilty and assessed punishment at twenty-five years in the Department of Corrections plus a fine in the amount of $1,500.00. We affirm.

In her second ground of error, appellant alleges that the trial court erred in not instructing a verdict for appellant based upon the insufficiency of the evidence. The record indicates that the deceased, Ruben Salazar, was shot at his place of employment on December 24, 1980. Appellant and deceased were the only two present at the time of the shooting. The firing of the shot brought other people into the garage and they called the police. When police officers Gravato and Loa arrived, appellant was still holding the gun and was instructed by the officers to put it down. Appellant stated to Officer Gravato, "I didn't mean to shoot him. It was an accident." She later told Officer Loa, "I shot him because he was going to hit me." The gun was later admitted as an exhibit. Officer Gravato identified the deceased as Ruben Salazar. Testimony revealed that appellant and the deceased had been living together since 1978. During this period of time, the deceased was still married to his wife, Lupe Salazar. A fellow worker, Robert Salinas, stated that after dinner the deceased and appellant came to the garage, that appellant remained there until he left at 4:00 to 4:30 p.m., that the deceased and appellant were not quarreling and appeared to be getting along. It further appears that the deceased and appellant had been involved in a fight in August of 1980, wherein deceased and appellant stabbed each other. The deceased had also told Salinas that he thought some day the appellant would kill him.

Dr. Rupp, Nueces County Medical Examiner, performed the autopsy on Ruben Salazar and attributed death due to a gunshot wound to the head. He further testified that in his opinion the shot was fired from a distance of a few inches.

The above described facts were introduced by the State during its case in chief, prior to appellant's request for an instructed verdict of acquittal. Viewing these facts in the light most favorable to the subsequent verdict, the State introduced sufficient evidence to allow the denial of the instructed verdict. *Valore v. State,* 545 S.W.2d 477 (Tex. Cr. App. 1977); *Earnhart v. State,* 582 S.W.2d 444 (Tex. Cr. App. 1979); *Martin v. State,* 610 S.W.2d 491 (Tex. Cr. App. 1980).

In her first ground of error, appellant claims that the evidence is insufficient to support the verdict of the jury. Appellant took the stand in her own behalf and claimed that the deceased had been drinking that afternoon; that when he drank, he became violent and often beat her. She testified that he chased her inside the garage and tried to hit her with a pipe; that she ran away from him and got a gun out of her purse which was in a car inside the garage; that he continued threatening her with the pipe and she shot at him. She stated she tried to hit him on one side of the leg. In response to Officer Gravato's direct testimony that the only pipe in the garage was found on the opposite side of the garage bay from the deceased's body, appellant explained that she had picked up the pipe after shooting the deceased and threw it to the other side of the garage. Appellant admitted that the gun she used to shoot the deceased was purchased by her the day before the killing, but she insisted that she purchased it to replace a gun previously stolen from her apartment. Appellant denied having gone by the deceased's home and shouting, "Ruben, you son of a bitch, I'll get you if it is the last thing I do." She also denied making any harassing telephone calls to the deceased's widow, Lupe Salazar.

In rebuttal, the State called Lupe Salazar. She fully controverted appellant's denial of the harassing phone calls concerning the deceased. She testified that she was present in the home when appellant came by the home and threatened the deceased. She denied that the deceased became vio-

lent when intoxicated. She stated that he usually went to sleep. Mrs. Salazar also testified that she had seen the appellant four or five times prior to the shooting and had never observed any bruises or lacerations or other injuries on her. She also stated that the deceased told her and his children that he wanted to return home and live with them. Finally, Mrs. Salazar testified that the day after the shooting, she examined the deceased's pickup which was parked outside in the garage parking space. She stated that the passenger's door was locked and the driver's door was unlocked. She found the appellant's purse underneath the seat on the passenger's side.

After reviewing all of the evidence, we believe it is sufficient to support the jury verdict. *Valore v. State, supra; Sloan v. State,* 515 S.W.2d 913 (Tex. Cr. App. 1974); *Silva v. State,* 546 S.W.2d 618 (Tex. Cr. App. 1977).

In her fourth ground of error, appellant contends that the State failed to prove the corpus delecti. The corpus delecti of murder consists of two elements. First, the body of the deceased must be found and identified. Second, the death of the deceased must be shown to have been caused by the criminal act of another. *Nathan v. State,* 611 S.W.2d 69 (Tex. Cr. App. 1981). The testimony of Officers Gravato and Loa established that the deceased's body was found and identified. The testimony of Dr. Rupp that the death resulted from a gunshot wound together with the testimony of Officers Gravato and Loa, as to their observations at the scene of the shooting as well as their testimony as to the admissions made by appellant, established that the deceased's death was caused by the criminal act of another. *Clay v. State,* 505 S.W.2d 882 (Tex. Cr. App. 1974); *Warren v. State,* 430 S.W.2d 215 (Tex. Cr. App. 1968).

Appellant contends in her third ground of error that the evidence was insufficient to support the conviction because the State failed to refute the exculpatory statements made by the appellant and introduced by the prosecution during its case in chief. At the time the police arrived at the scene, the appellant told the first police officer, "I didn't mean to shoot him. It was an accident." Appellant thereafter spoke with the second officer present and stated, "I shot him because he was going to hit me."

When the State puts into evidence statements of the accused party which exculpate the accused and then fails to refute them either directly or indirectly, the accused is entitled to an acquittal. *Palafox v. State,* 608 S.W.2d 177 (Tex. Cr. App. 1979); *Banks v. State,* 56 Tex.Cr.R. 262, 119 S.W. 847 (1909). In order for this rule to be applicable, it must be established that the accused admitted doing acts which would constitute the gravamen of the offense, then the Appellate Court must determine whether the statements alleged to be exculpatory are such that they would clear or tend to clear the accused from fault or guilt and then, finally, it must appear that the State has not refuted the exculpatory statements. *Palafox v. State, supra.*

The Court of Criminal Appeals has recently stated that an inference of untruth may be drawn by the jury from all of the evidence including any inconsistencies within the statement itself or between the statement and other evidence. *Maxwell v. State,* 628 S.W.2d 773 (Tex. Cr. App. 1980).

In the instant case, the two statements are not consistent with each other. One statement indicates an accidental shooting and the second indicates a shooting in self defense. In *Pope v. State,* 505 S.W.2d 556 (Tex. Cr. App. 1974), the defendant's conviction for murder was affirmed where his defense was accident and his exculpatory statements indicated self defense. In affirming the conviction, the Court stated that conflicts in the stories were circumstances tending to show guilt which, when connected with other circumstances, were sufficient to disprove the exculpatory statements. Similarly, in *Sloan v. State, supra,* the Court affirmed a murder conviction where the defendant had alleged self defense. The defendant claimed she killed the deceased after he became drunk and uncontrollable and cut off her finger.

The Court noted the defendant had made threats before on the deceased and stated that the jury may look to all evidence in determining the facts and issues and where the threatening statements tended to prove the murder was not self defense, there was sufficient evidence to disprove the exculpatory statements made by the defendant regarding self defense.

In addition, in *Glover v. State,* 566 S.W.2d 636 (Tex. Cr. App. 1978), the defendant was held to not be in a position to assert the fact that the State failed to refute exculpatory statements. In *Glover,* the Court said that the rule regarding exculpatory statements did not apply where the accused testifies before the jury in accordance with such exculpatory statements and the defensive theory is fairly submitted to the jury. In the present case, the appellant took the stand and claimed self defense and the issue of self defense was fairly reflected in the charge.

Appellant complains in her final ground of error that she was denied effective assistance of counsel. Appellant bases her complaint on the following grounds: Trial counsel spoke with appellant for only four and one half hours prior to trial, orally moved for a continuance at pre-trial due to the absence of certain witnesses which motion was denied, orally moved for an investigator which motion was also denied, never filed any motions to suppress or discover evidence or any motions in limine, inadvertently misinstructed the jury on the burden of proof in self defense during voir dire, announced ready for trial while still having not located three witnesses, failed to notify appellant of the pre-trial conference and then notified appellant of the trial two days prior to its inception, failed to elicit a plea bargain from the district attorney, failed to lodge any objections to the charge or request any limiting instructions, and finally, failed to put on any evidence regarding eligibility for probation despite having filed a motion for probation.

■ The determination of a claim of ineffective assistance of counsel must turn upon the particular circumstances of each case. *Ex Parte Prior,* 540 S.W.2d 723 (Tex. Cr. App. 1976). The right to effective assistance of counsel does not mean errorless counsel nor does it mean counsel judged ineffective by hindsight. *Rascon v. State,* 496 S.W.2d 99 (Tex. Cr. App. 1973). Rather, the right does entail counsel reasonably likely to render and in fact rendering effective assistance, the adequacy of the attorney's services being gauged by the totality of the representation. *Johnson v. State,* 614 S.W.2d 148 (Tex. Cr. App. 1981). A finding of ineffectiveness will not be supported by the fact that a different attorney might have pursued a different course since the trial strategy of counsel will not be second guessed by hindsight. *Blott v. State,* 588 S.W.2d 588 (Tex. Cr. App. 1979).

■ Following a careful review of the record, it appears that many of the actions or lack thereof can be attributed to trial strategy. Of the ones that cannot, the hearing on the motion for new trial indicates that the district attorney was not amenable to any plea bargain and that the prosecution desired to call the same witnesses and also tried unsuccessfully to locate them. The punishment assessed ruled out any possibility of probation since it was for a term of more than ten years. *Mercado v. State,* 615 S.W.2d 225 (Tex. Cr. App. 1981). Tex. Code Crim. Pro. art. 42.12. § (3a) (Vernon Supp. 1982). The charge of the court properly instructed the jury on the law of self defense and appellant's non-notification of the pre-trial hearing did not effect her representation at trial.

The judgment of the trial court is AFFIRMED.